**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LAQUAN L. SMITH, | ) | |
| | ) | Case No. 14-cv-5514 |
| Plaintiff, | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| v. | ) | |
| | ) | |
| JEFFREY NURSE, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER AND OPINION**

This matter is before the Court on (1) the parties' motions *in limine*, [86], [87], [88], and [90] and (2) Plaintiff's motion to modify the proposed pretrial order [100]. For the reasons explained below, the Court GRANTS Defendant's first motion *in limine*, [90] at 1; Defendant's third motion *in limine*, [90] at 2-3; and Defendant's fourth motion *in limine*, [90] at 3. The Court GRANTS IN PART AND DENIES IN PART Plaintiff's first motion *in limine* [86]; Plaintiff's second motion *in limine* [87]; Defendant's second motion *in limine*, [90] at 2; Defendant's sixth motion *in limine*, [90] at 4-5; and Defendant's seventh motion *in limine*, [90] at 5-6. The Court DENIES Plaintiff's third motion *in limine* [88]; and Defendant's fifth motion *in limine*, [90] at 3-4. Finally, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's motion to modify the proposed pretrial order [100]. In regard to the motion to modify the pre-trial order, the parties have been directed to try to complete the deposition of Dr. Maitra as soon as possible. With respect to the potential testimony of Mr. Boyd, Plaintiff has raised the prospect of calling Mr. Boyd as a rebuttal witness and provided a memorandum [104] in support of his position in that regard. Defendant may file a statement of his position on the propriety of calling Mr. Boyd as a rebuttal witness by 9/7/2016. The Court will consider the views of the parties on this issue

and undertake its own independent research in advance of trial with an eye toward offering any guidance that would be appropriate, but given the nature of rebuttal witnesses and evidence it is unlikely that any final ruling can be made prior to the presentation of both the Plaintiff's and the Defendant's cases-in-chief. As discussed at the pre-trial conference, if Defendant wishes prophylactically to take the deposition of Mr. Boyd in case he is permitted to testify at trial as a rebuttal witness, Defendant is granted leave to do so. If a separate court order granting leave to depose an incarcerated person would facilitate the taking of the deposition, the Court requests that counsel submit a proposed order and notify the Courtroom Deputy so that it can be signed and uploaded to the docket promptly. Finally, after reviewing the parties' additional submissions, the Court may set this matter for additional status hearing on 9/7, 9/8, or 9/9/2016.

## I.    Background[1]

In early 2014, Plaintiff LaQuan Smith ("Plaintiff") was an inmate in the Lawrenceville Correctional Center in Lawrence, Illinois ("Lawrenceville"). Plaintiff was required to attend a hearing in Cook County, Illinois on March 5, 2014. Plaintiff therefore needed to be transferred from Lawrenceville to the Stateville Correctional Center in Crest Hill, Illinois ("Stateville") until the date of his court appearance in Cook County. On February 26, 2014, Plaintiff boarded an IDOC bus at Lawrenceville to be transferred to Stateville. Plaintiff was cuffed and shackled with a tow chain. Officer Wilson (who is not a defendant in this lawsuit) drove the bus. Defendant Jeffrey Nurse ("Defendant"), an IDOC employee, escorted the bus in another IDOC vehicle.

In route to Stateville, Plaintiff was accused of talking. Officer Wilson pulled the bus over to the shoulder of the road. Defendant also pulled over his vehicle and boarded the bus.

---

[1] These facts are taken from Plaintiff's complaint, [1], which he filed while acting *pro se*. The Court recruited counsel to prepare for and represent Plaintiff at trial. See [64]. Plaintiff's motions *in limine* and motion to modify the proposed pretrial order were filed by his recruited attorneys. See [86], [87], [88], [100].

According to Plaintiff, Defendant told him that "[m]y intentions when I got on this bus was to slap the shit out of you!" [1] at 5. Defendant then grabbed Plaintiff by his jumpsuit, pulled him out of his seat, and slammed him into the caged window of the bus multiple times. Plaintiff's head and shoulder blades struck the caged window, causing Plaintiff severe pain. Plaintiff told Defendant that Defendant "was wrong," that Plaintiff "was not talking," and that Defendant "could've just simply taken away [Plaintiff's] IDOC ID and written [him] a ticket." *Id.* Defendant then exited the bus.

The bus proceeded to the nearby Pontiac Correctional Center ("Pontiac"). When the bus arrived, Officer Wilson disconnected Plaintiff's tow chain but left his cuffs on and shoved Plaintiff forcefully off the bus. Defendant, Officer Wilson, and Officer Chambers (who also is not a defendant in this lawsuit) beat Plaintiff with their fists and stomped on him with their feet. Plaintiff compared the beating to being "gang-jumped." [1] at 6. Several inmates on the bus observed the beating.

Officers Wilson and Chambers then took Plaintiff inside Pontiac and strip-searched him. Plaintiff was held overnight at Pontiac. The next day, he was transferred to Stateville. Plaintiff requested medical attention because his entire body was in pain. It is not clear from the complaint whether Plaintiff was given any medical treatment at Pontiac. Plaintiff was eventually transferred to the custody of Cook County, where he received medical attention from a nurse who provided him crutches and medication.

The jury trial in this case is set to begin on September 12, 2016.

## II.    Motions *In Limine*

### A.    Legal Standard

A motion *in limine* is a motion made "at the outset" or "preliminarily." BLACK'S LAW DICTIONARY 803 (10th ed. 2014).  The power to rule on motions *in limine* inheres in the Court's role in managing trials.  *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).  Motions *in limine* may be used to eliminate evidence "that clearly ought not be presented to the jury because [it] clearly would be inadmissible for any purpose."  *Jonasson v. Lutheran Child & Family Svcs.*, 115 F.3d 436, 440 (7th Cir. 1997).  The party seeking to exclude evidence "has the burden of establishing the evidence is not admissible for any purpose."  *Mason v. City of Chicago*, 631 F. Supp. 2d 1052, 1056 (N.D. Ill. 2009).  Because motions *in limine* are filed before the Court has seen or heard the evidence or observed the trial unfold, rulings *in limine* may be subject to alteration or reconsideration during the course of trial.  *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989).

### B.    Plaintiff's Motions *In Limine*

#### 1.    Plaintiff's Motion to Bar Evidence Regarding Felony Convictions [86]

Plaintiff moves to bar the introduction at trial of evidence of his 2013 felony convictions for residential burglary and attempted aggravated criminal sex abuse and an earlier felony conviction for burglary. Plaintiff argues that his convictions have "no probative value" to his lawsuit and pose a substantial risk of unfairly prejudicing the jury against him.  [86] at 3.  In response, Defendant argues that the probative value of the convictions outweighs any danger listed in Rule 403, because these crimes "go directly to [Plaintiff's] credibility."  [94] at 2 (citing unpublished decision of Judge Guzman in Case No. 03-cv-3074).  According to Defendant, the

convictions are "affirmative evidence of Plaintiff's disregard of social standards," [94] at 3, from which a jury properly could infer that Plaintiff is more likely to lie under oath, *id.* at 2.

Rule 609 of the Federal Rules of Evidence provides that, "for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence . . . must be admitted, subject to Rule 403, in a civil case . . . in which the witness is not a defendant." Fed. R. Evid. 609(a)(1)(A). Rule 403, in turn, provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The Seventh Circuit has elucidated a five-part test in criminal cases "to guide the district court in the exercise of its discretion in determining whether the probative value of a conviction outweighs its prejudicial effect: (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue." *United States v. Montgomery,* 390 F.3d 1013, 1015 (7th Cir. 2004). "While not all of those factors will apply in civil cases, the same general concerns may illuminate the court's analysis." *Buchanan v. McCann*, 2012 WL 1987917, at *1 (N.D. Ill. June 4, 2012) (citing *Anderson v. City of Chicago,* 2010 WL 4928875, at *2–3 (N.D. Ill. Nov. 30, 2010)). The Seventh Circuit has also cautioned the district courts to "be careful to ensure that a civil rights plaintiff's criminal past is not used to unfairly prejudice him or her." *Gora v. Costa,* 971 F.2d 1325, 1331 (7th Cir. 1992).

On balance, the five factors set forth above weigh in favor of admitting the fact, but not the nature, of Plaintiff's three felony convictions. As to the first factor, the fact that Plaintiff is a

felon has some, but not strong, impeachment value given the nature of Plaintiff's crimes. In general, "[r]ule 609 rests 'on the common-sense proposition that a person who has flouted society's most fundamental norms, as embodied in its felony statutes, is less likely than other members of society to be deterred from lying under oath in a trial by the solemnity of the oath, the (minuscule) danger of prosecution for perjury, or internalized ethical norms against lying.'" *Cartwright v. City of Chicago*, 2013 WL 3984434, at *1 (N.D. Ill. Aug. 2, 2013) (quoting *Campbell v. Greer*, 831 F.2d 700, 707 (7th Cir. 1987)). This general principle applies here even though Defendant has not cited cases demonstrating specifically that convictions for burglary or aggravated sexual assault implicate a party's truthfulness. On the other hand, the convictions pose an obvious risk of prejudice to Plaintiff due to the nature of the crimes. The fact that Defendant has been twice been convicted of burglarizing homes, and on one of those occasions also convicted of attempting to commit aggravated sexual assault, may be difficult for a jury to set aside, even if the jury believes Plaintiff's version of events. Turning to the second factor, the recency of two of Plaintiff's felony convictions (2013) weighs in favor of admission. The third factor is not relevant in civil cases. As to the fourth factor, Plaintiff's testimony is likely to be very important in this case because Plaintiff is a key witness to his own alleged beating and the jury will be required to determine whether it finds Plaintiff's version of what occurred on February 26, 2014 more plausible than Defendant's version. For the same reason, the fifth factor—the centrality of the credibility issue—weighs in favor of admitting Defendant's prior convictions.

Considering these factors together, the Court concludes that evidence of Plaintiff's felony convictions is admissible under Rule 609(a)(1)(A) but should be limited and sanitized to reduce the risk of prejudice to Plaintiff given the nature of his convictions. See *Schmude v. Tricam*

*Indus., Inc.*, 556 F.3d 624, 627 (7th Cir. 2009); *Buchanan*, 2012 WL 1987917, at \*2. Defendant's impeachment of Plaintiff shall be limited to the fact that Plaintiff is a convicted felon. If Defendant decides to impeach Plaintiff on this basis, the Court will provide a limiting instruction to the jury explaining the proper use of prior convictions for impeachment at trial. See Seventh Circuit Pattern Civil Jury Instructions 1.15 ("You have heard evidence that [Name] has been convicted of a crime. You may consider this evidence only in deciding whether [Name's] testimony is truthful in whole, in part, or not at all. You may not consider this evidence for any other purpose."). For these reasons, Plaintiff's first motion *in limine* [86] is granted in part and denied in part.

### 2. Plaintiff's Motion to Bar Evidence of Other Incidents Not Involving Plaintiff [87]

Plaintiff moves to bar the introduction at trial of any testimony or evidence concerning other incidents, not involving Plaintiff, that have occurred while transferring inmates from one correctional facility to another on an IDOC bus. According to Plaintiff, Defendant may use this evidence to argue that the correctional officers' actions on February 26, 2014 were "proper because of other unrelated incidents that they may have been involved in." [87] at 1. Plaintiff argues that this evidence should be excluded under Rule 402 because it is not relevant to any claims or defenses in the case and has no bearing on whether Defendant used excessive force on Plaintiff. Plaintiff also asserts that the risk of prejudice outweighs any probative value, because it could confuse the jury by giving the impression that the February 26, 2014 incident was similar to other incidents.

In response, Defendant argues that "[t]he facts and circumstances surrounding any prior incidents on a transfer bus are important to Defendant because they explain routine DOC procedure." [94] at 4. According to Defendant, "testimony in this case will establish that, from

time to time, an inmate on a transfer bus from downstate Illinois to Stateville will misbehave, and the standard operating procedure is for the officers in charge of the transfer bus to seek authorization to leave that inmate in the custody of the nearest DOC facility, which is often Pontiac Correctional Center." *Id.*

The Court concludes that Defendant and other witnesses will be allowed to testify about DOC's policies and procedures for leaving inmates who become unruly during transport at the nearest correctional facility and for using force on inmates during transport. Plaintiff does not object to such testimony. [97] at 4. However, the defense shall not be allowed to introduce testimony concerning specific instances in which other inmates became unruly during transport and were left at Pontiac (or other correctional centers), because those inmates are not a part of this case, the specific facts of their cases are not relevant to the jury's determination of what happened to Plaintiff on February 26, 2014, and Plaintiff has no way of cross-examining such evidence. For these reasons, Plaintiff's second motion *in limine* [87] is granted in part and denied in part. Plaintiff's counsel should make appropriate oral objections at trial if they believe that Defendant's counsel are eliciting testimony that exceeds the scope of the Court's ruling.

### 3. Plaintiff's Motion to Bar Evidence of Other Causes of Plaintiff's Injuries [88]

Plaintiff moves to bar the introduction at trial of any testimony concerning alternative causes of Plaintiff's injuries, including any pre-existing conditions or other incidents in which Plaintiff was involved. Plaintiff asserts that such testimony would consist solely of speculation, because "nothing in the documents produced in discovery or in [Plaintiff's] deposition provides any reason to believe any other incident caused his injuries." [88] at 2.

Defendant responds that there is evidence, in the form of a Department of Corrections incident report, showing that Plaintiff struggled with a "Non-Defendant" correctional officer

while Plaintiff was being removed from the prison transport bus on February 26, 2014. [94] at 5. Defendant "intends to elicit testimony from various witnesses about the nature of this struggle … and the extent to which such a struggle could have resulted in the relatively minor physical injuries that are documented in Plaintiff's medical records." *Id.*

The Court concludes that the defense shall be allowed to introduce evidence concerning other causes of Plaintiff's injuries, to the extent that (1) they relate to Plaintiff's removal from the transport bus and (2) the defense can establish a proper foundation for such evidence. Obviously, it is highly relevant in this case *how* Plaintiff was injured. The Court therefore agrees with Defendant that he "should not be foreclosed from presenting evidence and arguing as to why Plaintiff had some physical injuries, but that he did not receive them in the manner which Plaintiff contends." [94] at 6. Therefore, Plaintiff's third motion *in limine* [88] is denied. To the extent that Plaintiff's counsel believe that defense witnesses are engaging in speculation without foundation during the course of the trial, they should raise their specific objections orally.

### C. Defendant's Motions *In Limine* [90]

#### 1. Defendant's Motion to Bar Evidence of Indemnification

Defendant moves to exclude the introduction of evidence that he will likely be indemnified by the State of Illinois if he is found liable in this case. Defendant compares evidence of the State's indemnification obligation to evidence that a party is covered by insurance, which is governed by Rule 411 of the Federal Rules of Evidence. Rule 411 provides that "[e]vidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully," "[b]ut the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control." Fed. R. Evid. 411. Plaintiff does not oppose this motion *in limine*. For

this reason, and because Defendant's motion is consistent with the Federal Rules of Evidence, the Court grants Defendant's first motion *in limine*.

### 2.    Defendant's Motion to Bar Lay Medical Opinion

Defendant moves to bar Plaintiff from offering "medical opinions" about (1) his mental or physical condition following the alleged beating by Defendant, and (2) the pain or discomfort that the alleged beating caused him.  [90] at 2.  Defendant argues that, pursuant to Rule 701, a lay witness is limited to testifying based on his own perceptions and may not base his testimony on scientific, technical, or other specialized knowledge that is within the scope of Rule 702.  See Fed. R. Evid. 701, 702.  Therefore, Defendant concludes, "Plaintiff should be barred from stating, testifying, or opining concerning his medical and mental conditions or the causes thereof."  [90] at 2.

Plaintiff responds that he does not intend to "opine that the attack proximately caused his physical and health problems or offer a medical diagnosis of his injuries."  [92] at 2.  Rather, Plaintiff explains, he will "describe what he experienced during and after the events in question, and why and how he believes he has been affected by those events."  *Id.*  In his reply brief, Defendant acknowledges that, with Plaintiff's clarification of the testimony that he intends to introduce, "the parties are now basically in agreement" on Defendant's second motion *in limine*. [99] at 2.

The Court agrees that Defendant should be allowed to testify about the pain and suffering that he experienced during and after the alleged beating.  As Plaintiff points out, "'courts have routinely held that lay individuals are certainly capable of reliably understanding and testifying to their own medical condition.'"  [92] at 2 (quoting *Gage v. Metro. Water Reclamation Dist. of Greater Chicago*, 365 F. Supp. 2d 919, 929 (N.D. Ill. 2005)).  The Seventh Circuit has also

recognized that, given "the uniquely subjective nature of pain," a Defendant may rely on "his own testimony to prove his pain and suffering." *Hendrickson v. Cooper*, 589 F.3d 887, 893 (7th Cir. 2009) (finding that there was sufficient evidence to support jury's verdict for plaintiff in excessive force case, where the plaintiff "testified that [the defendant] beat him up and that it hurt really bad"). Defendant will not, however, be allowed to (1) provide a medical diagnosis of his injuries, or (2) testify that the alleged beating proximately caused his medical problems, because this goes beyond lay testimony based on Defendant's rational perceptions. Cf. *Collins v. Kibort*, 143 F.3d 331, 337 (7th Cir. 1998) (testimony by employee regarding his general medical problems did not suggest that employer caused these problems, and, thus, was admissible in Title VII action to show damages arising out of employee's loss of medical insurance after his change in employment status, despite employer's objection that employee did not have any medical expertise). For these reasons, the Court grants in part and denies in Defendant's second motion *in limine*.[2]

> **3.** **Defendant's Motion to Bar Any Solicitation of Evidence Concerning the Personal Information of Defendant and Any Other IDOC Employee**

Defendant moves to bar Plaintiff's counsel from soliciting at trial any personal information about Defendant or any other IDOC employees who may serve as witnesses. Defendant explains that exposing personal information of correctional officers at IDOC's maximum security prisons—including home addresses, phone numbers, and marital and parental status of the officers—has the potential to put their safety and the safety of their families at significant risk. Plaintiff does not oppose this motion. For this reason, and because the IDOC

---

[2] Plaintiff's medical witnesses likewise will be limited to testifying about treatment and diagnosis—not causation—because they were not disclosed as opinion witnesses under Federal Rule of Civil Procedure 26(a)(2).

employees' personal information has no apparent relevance to the case, the Court grants Defendant's third motion *in limine*.

**4.      Defendant's Motion to Bar Evidence of Prior Lawsuits Involving Defendant**

Defendant moves to bar evidence of prior lawsuits involving Defendant on the grounds that it is not relevant and would be unduly prejudicial to Defendant.  Plaintiff does not oppose this motion.  Therefore, the Court grants Plaintiff's fourth motion *in limine*.

**5.      Defendant's Motion to Bar Evidence of the Absence of a Disciplinary Ticket Against Plaintiff**

In his fifth motion *in limine*, Defendant argues that Plaintiff should be precluded from introducing any evidence concerning the absence of an IDOC disciplinary ticket charging Plaintiff with causing a disturbance on the transport bus.  Defendant explains that a disciplinary ticket was referred to in the incident report prepared by IDOC, but that IDOC does not have a copy of the ticket or know whether it was actually written.  According to Defendant, the absence of a disciplinary ticket is not relevant because "[t]he mere fact that a ticket was not processed does not make the transfer bus incident more or less likely to have occurred."  [90] at 4.

In response, Plaintiff argues that the absence of the ticket is relevant because it bears on the reliability of the incident report, which Defendant has marked as a trial exhibit. Specifically, Plaintiff argues, the absence of the ticket is relevant to (1) "the weight the jury should assign to the incident report," and (2) the credibility of the correctional officer who wrote the report, who is on Defendant's "may call" witness list.  [92] at 3-4.

The Court concludes that Plaintiff's counsel will be allowed to elicit testimony concerning the absence of a disciplinary ticket.  The absence of a ticket is relevant to the reliability of the incident report and its author's credibility.  A reasonable juror could find that

the absence of a ticket makes the defense's version of events less plausible. Defendant posits that a ticket may not have been issued by IDOC because IDOC transferred custody of Plaintiff to Cook County, but even if true, that argument goes to the weight to be given to the absence of the ticket, not to the relevance of the ticket's absence. In addition, without testimony concerning the absence of a ticket, the jury may infer from the incident report that Plaintiff was disciplined for what occurred on the transport bus, even though there is no proof that he was. For these reasons, the Court denies Defendant's fifth motion *in limine*.

### 6. Defendant's Motion to Bar Evidence of Events Occurring After Plaintiff's Acceptance and Entry Into Pontiac

Defendant moves to bar the introduction of evidence concerning events that occurred after Plaintiff's entry into Pontiac, including specifically evidence regarding a strip search that took place after the transfer bus incident and his movement between Pontiac and the Cook County Jail. Defendant argues that these events are not relevant to Plaintiff's claims against Defendant and that testimony about them would be a waste of time. Defendant also offers to stipulate to facts explaining what happened to Plaintiff after the transfer bus incident, including that Plaintiff was strip-searched at Pontiac, that he spent the night at Pontiac, that he was transferred to Stateville the next day, and that he was then transferred to the custody of the Cook County Sheriff. See [90] at 5.

Plaintiff does not oppose this motion "in general," but requests that the Court's order make clear that Plaintiff "may introduce evidence regarding subsequent medical diagnosis and treatment as well as testimony regarding subsequent physical, mental, and emotional damages, including pain and suffering." [92] at 5. In reply, Defendant asserts that the parties appear to be in agreement on this motion *in limine*. See [99] at 1. Defendant states that he does not oppose

barring testimony about the strip search at Pontiac or about Plaintiff's continued travels to Stateville and Cook County Jail.

Based on the parties' apparent agreement, the Court concludes that Defendant will be barred from introducing testimony about (1) the strip search that occurred at Pontiac, and (2) Plaintiff's travels from Pontiac to Stateville and from Stateville to Cook County Jail. To the extent that other events that occurred after Plaintiff's entry into Pontiac are raised during the course of the trial, defense counsel should make specific oral objections as necessary. Defendant will not be barred from introducing evidence regarding subsequent medical diagnosis and treatment or testimony regarding subsequent physical, mental, and emotional damages, including pain and suffering, so long as such evidence and testimony is not objectionable on some other basis. [92] at 5. Finally, it is not clear from Plaintiff's brief whether he wants to stipulate to the facts offered by Defendant. If he does, then a stipulation may be read during the appropriate point in the trial. For these reasons, Defendant's sixth motion *in limine* is granted in part and denied in part.

### 7. Defendant's Motion to Bar Hearsay Evidence of Plaintiff's Statements to Medical or Mental Health Providers

In his final motion *in limine*, Defendant moves to bar on hearsay grounds evidence of statements that Plaintiff made to medical and mental health care providers. Defendant anticipates that these records may contain statements that reflect Plaintiff's conclusions about the cause of his medical and mental injuries, which Plaintiff contends are hearsay. Plaintiff further argues that Rule 803(4)—which excludes from the hearsay rule certain statements made for medical diagnosis and treatment—does not apply because the evidence Plaintiff seeks to introduce would not be considered by a doctor to be relevant to the treatment or diagnosis of Plaintiff's medical condition. [90] at 6 (citing *Gong v. Hirsch*, 913 F.2d 1269, 1273 (7th Cir.

1990)).  According to Defendant, Plaintiff's statements that his injuries were caused by an attack by Defendant and other IDOC employees could not have been relevant to any medical or mental health provider in diagnosing or treating Plaintiff.

Plaintiff opposes this motion.  According to Plaintiff, the Seventh Circuit has expressly held that a patient's statement to medical professionals that another person beat him are admissible under this rule.  See [92] at 6 (citing *United States v. Burton*, 110 F. App'x 692, 694 (7th Cir. 2004)).

The Court concludes that Plaintiff will be allowed to introduce evidence of the statements that he made to medical and mental health providers about the *cause* of his injuries—an alleged beating—but not about who inflicted those injuries.  Rule 803(4) provides that "[a] statement that: (A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause" is "not excluded by the rule against hearsay."  Fed. R. Evid. 803(4).  "The rationale behind Rule 803(4) is that a patient's self-interest in promoting the cure of his own medical ailments guarantees the reliability of statements the patient makes for purposes of diagnosis or treatment."  *Gong*, 913 F.2d at 1273.  Under this rule, statements that "reveal symptoms, objective data, surrounding circumstances or any similar *factual* data that a reasonable physician would consider relevant in the treatment or even diagnosis of a medical condition" are admissible.  *Id.* at 1274 (emphasis in original).

In *Burton*, which involved the revocation of Burton's supervised release for committing domestic battery on his victim Spruill, the Seventh Circuit held that "it would be frivolous to argue that the district court erroneously relied on Spruill's statements to medical personnel that Burton had beaten her" because these "statements would be admissible under an exception to the

hearsay rule because they were given for the purpose of medical treatment."  110 F. App'x at 694; see also *Rascon v. Hardiman*, 803 F.2d 269, 279 (7th Cir. 1986) (in action brought by widow of deceased husband who allegedly died from injuries sustained during a beating by correctional officers, the husband's statements to his doctors "indicating cause of injury— beating" would be admissible regardless of whether it was error for the district court to admit statements indicating that particular correctional officers were at fault, and any such error was harmless because "[t]he jury would have been able to draw the inference that the beating had been inflicted by the only other parties to the incident—the officers" and the judge provided a limiting instruction that the doctor's testimony was not evidence that the husband was beaten by the defendants).

As in *Burton*, the Court concludes that a patient's statement that his medical or mental injury was caused by a physical beating is the type of statement concerning "surrounding circumstances" that a physician might rely on to diagnose and treat the patient.  *Gong*, 913 F.2d at 1274.  For instance, a physician might conclude from a patient's statement that he was beaten that it is necessary to take x-rays to determine if bones have been broken, or that pain medication should be prescribed.  Therefore, the Court denies Defendant's seventh motion *in limine* and will allow the introduction of Plaintiff's statements to medical or mental health care providers that he was beaten.  Consistent with its ruling on Defendant's second motion in *limine*, the Court will not allow testimony regarding statements that Plaintiff made to medical or mental health providers about *who* inflicted the beating.  While the Court recognizes that in some instances, the identity of the perpetrator may be pertinent to the course of treatment (see, *e.g.*, *United States v. Pacheco*, 154 F.3d 1236, 1241 (10th Cir. 1998) (finding child's statements to physician about identity of sexual abuser who was member of child's household admissible because victim's

16

relationship with perpetrator made identity of perpetrator reasonably pertinent to course of treatment)), in this case there is no indication that the treatment would have been any different had Plaintiff's assailant been another prisoner, as opposed to a corrections officer as Plaintiff contends. For these reasons, Defendant's seventh motion *in limine* is granted in part and denied in part.[3]

## IV.    Plaintiff's Motion to Modify the Proposed Pretrial Order [100]

The parties filed their proposed pretrial order on August 12, 2016. See [85]. The proposed pretrial order identifies the witnesses that each party will or may call at trial. *Id.* at 3-5. Plaintiff now seeks to modify the pretrial order in two ways. Defendant opposes both changes.

First, Plaintiff has informed the Court that one of its will-call witnesses, Dr. Maitra, will be on medical leave and unable to testify live during the trial. Plaintiff proposes to depose Dr. Maitra prior to the trial and to read the relevant parts of her deposition transcript into evidence.

Pursuant to the Federal Rules of Civil Procedure, at trial "all or part of a deposition may be used against a party" if (A) "the party was present or represented at the taking of the deposition or had reasonable notice of it"; (B) "it is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying; and (C) "the use is allowed by Rule 32(a)(2) through (8)." Fed. R. Civ. P. 32(a)(1). As is relevant here, Rule 32(a)(4) allows a party to "use for any purpose the deposition of a witness, whether or not a party, if the court finds . . . that the witness cannot attend or testify because of age, illness, [or] infirmity." Fed. R. Civ. P. 32(a)(4)(C).

The Court concludes that modification to the pretrial order to allow Plaintiff's counsel to use Dr. Maitra's deposition transcript in lieu of live testimony is justified and will not cause

---

[3] As mentioned at the final pre-trial conference, the parties should review their proposed exhibits to ensure that they are redacted, if necessary, to effectuate the Court's rulings on the motions in limine.

undue prejudice to Defendant. Plaintiff's counsel disclosed Dr. Maitra as a will-call witness in the proposed pretrial order and promptly informed Defendant and the Court when they learned that Dr. Maitra would be on medical leave and unable to testify live during the trial. Plaintiff's counsel have also informed the Court that they are in the process of scheduling the deposition and hope to complete it by the end of this week, or August 2, 2016. In its most recent minute order, the Court advised the parties that they should attempt to complete Dr. Maitra's deposition by August 2, 2016. The Court presumes that defense counsel will be present at the deposition and that the documents from which she most likely would base her testimony have been disclosed on Plaintiff's exhibit list. Assuming that is the case, then all the requirements of Rule 32(a)(1) will be met and Plaintiff will be allowed to use Dr. Maitra's deposition at trial.

The second change that Plaintiff proposes to make to the pretrial order is the addition of a new witness—Randy Boyd—to Plaintiff's list of fact witnesses. Mr. Boyd was one of the other inmates on the transport bus on February 26, 2014 and, according to Plaintiff, was an eyewitness to Defendant's alleged beating of Plaintiff. Plaintiff's counsel assert that they did not learn about Mr. Boyd until the last week of July or first week of August, 2016, when Plaintiff and Mr. Boyd were both incarcerated at the Robinson Correctional Institute and "Mr. Boyd notified Mr. Smith that he was on the bus and had witnessed the incident alleged in the Complaint." [100] at 1. Plaintiff notified his counsel about Mr. Boyd on August 19, 2016. Plaintiff's counsel were unable to interview Mr. Boyd until after the deadline for the proposed pretrial order (August 12, 2016) had passed.

Under the Federal Rules of Civil Procedure, parties are required to disclose the names of all witnesses that they may present at trial, other than solely for impeachment, at least 30 days before trial. See Fed. R. Civ. Pro. 26(a)(1)(3)(A)(i). If a party fails to do so, he or she cannot

call that witness at trial "unless the failure was substantially justified or is harmless." Fed. R. Civ. Pro. 37(c)(1). Applying this standard, the Court concludes that it would be inappropriate to allow Mr. Boyd to be added to Plaintiff's fact witness list less than two weeks before trial because Plaintiff has not demonstrated that this late addition is substantially justified or harmless.[4]

The late addition of Mr. Boyd to the witness list is not substantially justified because Plaintiff should have been able to identify Mr. Boyd as a potential witness by the time that the parties filed the pretrial order on August 12, 2016. Plaintiff, while still acting *pro se*, reported to the Court on March 23, 2016 that discovery was complete. See [63]. Plaintiff was aware at this time that other inmates on the bus had witnessed the alleged beating. See [1] at 6 (allegation in complaint that "[s]everal inmates informed me they stood up over the blocked window & witness[ed] this violent brutal beating by the IDOC personnel"). Plaintiff was also aware that he did not know the identity of those inmates. In fact, that precise issue was raised during Plaintiff's deposition on August 19, 2015, when defense counsel asked Plaintiff if he knew the names of or had spoken with any of the other inmates on the transport bus, and Plaintiff answered in the negative. See [102-2] at 3-4. Although the Court does not hold *pro se* prisoner litigants to a very high standard when it comes to discovery, all litigants have some obligation to advance their own cases, and it does not seem too much to expect even a *pro se* Plaintiff to

---

[4] This ruling does not preclude Plaintiff's counsel from calling Mr. Boyd as a rebuttal witness, if counsel can demonstrate that Mr. Boyd is a proper rebuttal witness based on the evidence and testimony presented by the defense. As noted at the outset of this opinion, Plaintiff has filed a brief [104] setting out his position on the propriety of allowing Mr. Boyd to testify as a rebuttal witness, and the Court has invited Defendant to submit its position in writing in advance of trial as well. Obviously the parties will be given a chance to supplement their views on any rebuttal witnesses or evidence after the full presentation of the evidence. Nevertheless, briefing of this issue prior to trial will be useful in allowing the Court to consider the controlling legal framework in this Circuit that will guide the exercise of the Court's discretion in considering any request for a rebuttal case that Plaintiff may make.

request information from Defendant in an attempt to identify obvious potential witnesses to the main event in the case.

Moreover, notwithstanding Plaintiff's own less-than-robust efforts to obtain discovery materials while representing himself, Plaintiff had a further opportunity to pursue any promising leads after the Court recruited counsel to represent Plaintiff at trial. See [64]. Plaintiff's counsel entered their appearances on April 14, 2016 and since that date have worked diligently to prepare the case for trial. See [65], [66]. At the status hearing on May 19, 2016, the parties agreed to a September 12, 2016 trial date. See [73]. The parties also agreed to reopen discovery and began gathering supplemental materials on an informal basis. On June 24, 2016, Plaintiff's counsel requested that Defendant produce, among other things, "[d]ocuments sufficient to identify the corrections officers, inmates, and anyone else on the bus or in any chase vehicles at the time of the incident." [102-1] at 5. Approximately two weeks later, on July 8, 2016, defense counsel produced to Plaintiff's counsel a list of the other inmates who were on the bus. See [102] at 4, ¶ 14. The document was marked "attorneys eyes only." The production of this document put Plaintiff's counsel on notice of the identity of the other inmates on the transport bus. Had this appeared to be a potentially fruitful avenue for obtaining additional fact witnesses, counsel could have attempted to contact and interview those inmates.[5] And had counsel experienced difficulty tracking down any specific individuals, Plaintiff could have enlisted the assistance of the Court and/or opposing counsel and perhaps have sought a timely continuance of the trial date, if necessary. However, given Plaintiff's deposition testimony, it would not strike the Court as surprising if counsel concluded that the list was not likely to generate any useful leads and thus resolved to focus their attention on developing other aspects of the case. As it turns out, the

---

[5] Profiles of all IDOC inmates, including the correctional centers at which they can be reached, are available on IDOC's "Offender Search" website. See https://www.illinois.gov/idoc/Offender/Pages/InmateSearch.aspx. The website shows that Mr. Boyd has been in IDOC custody since August 12, 2013.

identification of Mr. Boyd came about through a series of happenstances that nobody could have foreseen: Boyd was transferred to Robinson where Plaintiff was in the final days of his sentence; the two men were talking about their respective lawsuits; as Plaintiff described his lawsuit, Boyd realized that he was present during the incident giving rise to Plaintiff's case.

At the end of the day, the dispositive factor is not whether Plaintiff could or should have located all of his fact witnesses in a more timely manner. The bottom line is that the addition of Mr. Boyd to the witness list at this late date would not be substantially justified or harmless because Defendant and his counsel would suffer prejudice. The trial in this case is set to begin in less than two weeks. The reason that rules contemplate disclosures, deadlines, pre-trial orders, witness lists, and similar procedural devices is to allow for trial preparation and to avoid last-minute surprises or the proverbial "trial by ambush." Defense counsel would have a right to depose Mr. Boyd prior to his testifying at trial, but doing so would take away from the short amount of time (which includes a long holiday weekend) that they have left to prepare for trial. Counsel already must add to their calendars the deposition of Dr. Maitra due to her unavailability the week of the trial. Scheduling yet another deposition at this late date would impose another substantial burden on the parties, and this one would be unusually difficult logistically, because it takes time to arrange a deposition with a correctional center and the Robinson Correctional Center is located at least four hours from Chicago. Finally, having explored the issue at the pre-trial conference, the Court has concluded that it would be impractical and perhaps prejudicial to postpone the trial date given the Court's and counsel's busy trial schedules, and the fact that many of the witnesses have already been subpoenaed for trial and rearranged their schedules in order to appear. Delaying the trial until sometime in 2017 would place another four to six months (or more) distance between the trial date and the events giving rise to the claim, resulting

in a greater degree of potential prejudice to one or both parties as the result of fading memories.

For these reasons, the Court grants in part and denies in part Plaintiff's motion to modify the proposed pretrial order [100]. Plaintiff shall be allowed to introduce Dr. Maitra's deposition transcript into evidence in lieu of her live testimony. Plaintiff will not be allowed to add Mr. Boyd to his witness list or to present Mr. Boyd's testimony in Plaintiff's case-in-chief.

## V.    Conclusion

For these reasons, the Court GRANTS Defendant's first motion *in limine*, [90] at 1; Defendant's third motion *in limine*, [90] at 2-3; and Defendant's fourth motion *in limine*, [90] at 3. The Court GRANTS IN PART AND DENIES IN PART Plaintiff's first motion *in limine* [86]; Plaintiff's second motion *in limine* [87]; Defendant's second motion *in limine*, [90] at 2; Defendant's sixth motion *in limine*, [90] at 4-5; and Defendant's seventh motion *in limine*, [90] at 5-6. The Court DENIES Plaintiff's third motion *in limine* [88]; and Defendant's fifth motion *in limine*, [90] at 3-4. Finally, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's motion to modify the proposed pretrial order [100].

To reiterate the specific ruling and instructions as to the motion to modify the pre-trial order: (1) the parties have been directed to try to complete the deposition of Dr. Maitra as soon as possible; (2) although Mr. Boyd will not be added to the witness list or called in Plaintiff's case-in-chief, Defendant may file a statement of his position on the propriety of calling Mr. Boyd as a rebuttal witness by 9/7/2016; (3) if Defendant wishes prophylactically to take the deposition of Mr. Boyd in case he is permitted to testify at trial as a rebuttal witness, Defendant is granted leave to do so; and (4) if a separate court order granting leave to depose an incarcerated person would facilitate the taking of the deposition, the Court requests that counsel submit a proposed

order and notify the Courtroom Deputy so that it can be signed and uploaded to the docket promptly.

Dated: August 31, 2016

_____
Robert M. Dow, Jr.
United States District Judge